Good morning, Your Honors. Good morning. Good morning. My name is Dan Harbottle. I represent the Capistrano Unified School District in the four consolidated or at least joined matters for purposes of oral argument. And with respect to the time, I will, I think because the district is the appellant in three of the four, I will try very hard to limit my first round to about ten minutes addressing the first two issues, the first two appeals and then move to the next with additional time. All of these cases arise out of the IDEA under the Individuals with Disabilities Education Act. And they flow from an Office of Administrative Hearings decision back in February of 2006 after a four-day trial, four-day hearing, that was overturned essentially in a paragraph or two by the district court without oral argument. I've got a question because it didn't seem to be developed very well in either brief. What is the standard which the district court applies to the findings of the hearings officer of the state? It's not developed that well in the law, Your Honor. And the reason for that is that it's not strictly, for example, a summary judgment sort of standard nor a full-blown de novo review. It's somewhere in the middle in this. Why shouldn't we treat this like we do any administrative agency, substantial evidence in the record as a whole? I think you should. I think that's a very deferential standard rather than what appears to be going on here, which is essentially a de novo review. A de novo review by this court, I think, is appropriate on mixed questions of fact and law. I think that the district court erred in failing to give appropriate deference to the factual findings of the Office of Administrative Hearings, ALJ. There's a whole series of facts that were not addressed in any degree by the district court that demonstrated to the district and demonstrated, of course, to the ALJ at the OAH level that there was no prejudice to the student's rights with respect to what we call in the briefs the Lannington issue, which is this question whether a single expert witness of the student had an insufficient, a prejudicially insufficient observation of the classroom placement. Counsel, following up on Judge Scanlon's question, in the decision reached by the district court, the district court devoted a significant amount of attention to the proper standard by which a district court reviews fact findings by an administrative law judge. Like you, concluded that there was a great deal of uncertainty, but seemed to come to the conclusion that the standard Administrative Procedure Act approach, substantial evidence, did not apply, but that there was a sliding scale of deference owed depending upon the extent to which the administrative law judge had developed the record, articulated the law, and so on, and then concluded that in this case, the judge would give substantial deference. What is your understanding of the difference between substantial deference and the more significant deference? The issue is, as you formulated, it is harmless error. How should a district judge address an administrative law judge's determination that an error had occurred, but it was harmless? The very first thing that the district court judge ought to have done was to analyze the specific facts in the record that demonstrated to the ALJ that there was no prejudice, and I'd be glad to run through some of those to you. I think ultimately, from a pragmatic point of view, the difference is, it's a distinction without a difference. I think it's accurate to say that the district court afforded or articulated the right standard, that substantial deference with a careful and thorough review of an ALJ was appropriate. However, the district court did not apply the appropriate standard because the district court did not afford that deference. Well, I think I'm coming at this from a slightly different point of view than my colleagues. It seemed to me that what the district court did was to adopt Judge Alarcon's approach in the, I think it's the Federal Way School District case, and look to determine whether the failure to give more than 20 minutes to the parent psychologist in observing the classroom was a structural error that so violated the due process rights of the parents that they couldn't meaningfully participate in the process, and that that error was not harmless. And if that's the case, then you would never get to the question of whether the understudy underlying facts supply substantial evidence to support the ALJ's findings because you found a flaw in the entire proceeding that invalidates whatever the conclusion was. Right, but I think that the, I think under either of those standards, articulated as you just did correctly, I think, there has to be an analysis of the facts. There cannot be simply a de jure decision that that particular denial or error, without support in the facts, under either of those standards. I think that the two-part analysis under R.B. and some other cases is the fleshed-out version of the structural defect analysis. Well, you would never get to the facts if you adopt Judge Alarcon's theory. And I think that if you would, if you would... That it was structural error, which goes to the heart of the fairness of the proceeding, and therefore you don't ask whether or not the error was harmless or not. You don't care.  And therefore the conviction cannot stand. That would be an erroneous standard under these facts. And I think that the, I think the court ought to have determined which standard to apply and articulate which standard. This court appeared to apply the, did not articulate that it was applying that standard. And that would not be the appropriate standard in this case. Here's the language out of R.B. which you just referenced. The court gives particular deference where the hearing officer's administrative findings are thorough and careful. Why does it not apply here? It does, Your Honor. It does. And this court, this district court, in one of the ironies of the case, found, in fact, that the ALJ's decision was thorough and substantial. And yet she overturned, the court overturned that thorough and substantial adjudication without a single reference to any specific fact. I know my facts are in the brief. I do want to take some time to talk briefly about them because I think it... Well, I have one question about the 20-minute. Do I understand correctly that the 20-minute limit applies across the board? It would be true of any parent, but that a parent can ask that an additional 20-minute sequence occur on another occasion. In other words, you can't have more than 20 minutes at one time, but you have, as I understand it, an unlimited amount of time if you space it out over time. That's correct. And that was not particularly made clear by the district court, although it was made clear by the ALJ. And in this particular case, Dr. Lennington's visit was 20 minutes. There was never a revisit, a re-request, neither, even on the same day, nor any other. There were three other experts, at least, retained by the student, none of whom asked to observe the classroom. But we don't know if the school district would have afforded a second visit on the same day. The record is silent on that point, isn't it? All we know is that it's limited to 20-minute observations. It's limited to 20-minute increments, and there's no... There's nothing in the record that indicates that has to be a daily. Nobody ever asked the principal or the... No, and that's a good point, because the policy, Your Honor, is not 20 minutes firm and final. It's 20 minutes with flexibility by the site administrator. And in this particular case, the observation occurred... Well, one of the things that really matters here, I think, Your Honor, is that the standard that applies is whether or not the observation in some manner prejudiced the parents' rights to participate in an IEP meeting. The only two IEP meetings... But you're arguing harmless error, and I'm still hung up on what the standard of review is. If it's structural error, then we never get to the prejudice analysis. Well, even as you articulated it, Your Honor, structural error in itself is not a per se matter. There has to be some articulation and analysis of why this particular error is so egregious that it violates the rights so completely that there's an utter failure of fairness. I think the confusion arose when the ALJ used the term technical violation of the education code, whereas the district court used the word procedural violation and then proceeded to examine whether it was a substantive error, which I guess is another way of saying, was it harmful, and concluded it was. Correct. Now, the education code, the Cal Code, at the time of the filing of the due process request, demanded that, demanded the two-part analysis. Procedural errors are not to be found violations of the free and appropriate public education unless there's a finding of prejudice to the IEP process or otherwise. That's what the law required of the ALJ and that's what the law required of the court. I think the vast number, the vast majority of cases that address the question whether procedural error constituted a violation of FAPE do the harmless error analysis. It undertakes the analysis. I think the only case that one could put their finger on that says it didn't go as deeply as the others is the case Your Honor mentioned. But even in that case, the analysis was, because the student was going to be in a regular education classroom, because the parties understood that and there was no regular education teacher at the IEP, therefore, under those facts, there was a structural defect. Under these facts, as articulated in the brief, and I'm glad to expand if we need to, there was no basis, in fact, to find any structural error or harmless error. And the one point I want to make sure I don't leave the podium before I utter is that Dr. Lennington, in terms of prejudice, Dr. Lennington stood behind the private program, the 40-hour a week, $100,000 a year program, without observing it. If the student's case at due process or in the IEP process was so dependent on Dr. Lennington's view of the competing programs, why did she not observe it? Why did she not come back and ask about the districts? Why in her report, issued months before the observation, did she opine that this student could not be in any classroom? And don't we also have a factual finding by the administrative law judge after listening to Dr. Lennington's testimony that 20 minutes, 90 minutes, 3 hours, it wouldn't have made any difference to her overall opinion that the classroom setting was not appropriate for the student? Correct. Because she came into the hearing with that opinion, she articulated that opinion at the hearing, and she never changed that opinion, nor did any of the other experts, none of whom observed the placement, and still opined that this student could not be in a classroom. The ALJ made a very good point, I'll end on this, and that is, after 4 days of testimony, the determination by the ALJ was, the difference between the two parties' experts was not over the classroom, or this classroom, it was over any classroom. That is, I think, the fundamental reason why there was no relevance to the ultimate question, whether the length of time was sufficient. Thank you. Thank you, counsel. Good morning, Bruce Bothwell on behalf of the appellants, well, appellees and appellants in the matters, LM and his parents, parent Sam M is present in the courtroom. I'd like to start out with addressing a point made by Judge Tallman. I don't believe that the judge used a structural defect analysis in this case. I believe that she did, in fact, use a two-part analysis. She found that there had been a procedural violation, and that it did interfere with the parent's right to participate in the IEP process, and in doing so... But the participation was based solely upon the limitation imposed on Dr. Lennington, correct? Otherwise, the parents had meetings with the school district. They basically were...the school district came to the house. I mean, there were all kinds of interactions. It is not just the process that was involved here. It was also the parent's right to produce testimony at the due process hearing. But the testimony that they claim was so important was Dr. Lennington didn't get more than 20 minutes of observation time in the classroom. Is there any other restriction that was imposed on her? That was the restriction that was imposed, and the district court adopted the findings of the administrative law judge that Dr. Lennington was not particularly familiar with the classroom offered by the district, and so her testimony carried less weight. But we've got a factual finding by the ALJ that it wouldn't have made any difference to her opinion that a classroom environment was not an appropriate placement for this student, and that opinion wouldn't have changed if she'd stayed longer than 20 minutes. I don't believe the ALJ made such a finding. The ALJ...and I think that such a finding would be contrary to the ALJ's finding that Dr. Lennington's testimony carried less weight because she did not have an opportunity to observe or to familiarize herself. That is the procedural violation. I think that when the district is trying to talk about the other facts in this case, they're going into issues of substantive appropriateness, which this court has not as declined to factor into a procedural violation analysis. Well, counsel, what's troubling me here is why didn't Dr. Lennington come back the next day and do another 20 minutes, and if she needed more time, she could come back a third day and do another 20 minutes? All of that was available to her. Well, one of the problems with that is she's not able to observe an entire sequence of events as they're taking place. And again, the administrative law judge, and I think that this is why the district...why the main problem for the district under a clear error standard here is none of the administrative law judge's findings of fact were disturbed. But getting back to your specific question, the administrative law judge found that it was not reasonable to expect Dr. Lennington to come from West Los Angeles, to drive down a three-hour round trip to observe for 20 minutes. But she went on and made further findings. Well, she went on and she made the finding that really I think that what she did was, again, she went into and decided, well, you know, I find the program substantively appropriate. And again, if you look back at the analysis... Why isn't that finding entitled a deference by the district judge? I'm sorry, beg your pardon, which point? The latter. That there was substantive appropriateness? Correct, yeah. Because we cannot consider the issue of substantive appropriateness when there's been a procedural violation which has denied the parents their right to participate in the process. But the procedural violation does not in and of itself trump everything, does it? Can it be evaluated in the larger context or not? Well, I don't think that that's something that this Court has done. If you look at ML versus Federal Way, the Court made clear that once you find a procedural violation, both prongs are satisfied, that you don't go on and do the substantive analysis. And that's really consistent with Chief Justice Rehnquist holding in the Rowley case, in which he said in probably the most cited, quoted language in special education litigation, that if you have procedural compliance, I'm paraphrasing, that quote would in most cases share much, if not all, of what Congress wished in the way of substantive content in an IEP. It follows from that that when you do not have procedural compliance, that substantive product, if you will, or IEP, is suspect. But you're arguing structural defect. And what I think happened here was that the District Court found, under the Education Code, that there was a procedural violation, and then tried to examine whether or not that procedural violation significantly impaired the ability of Dr. Lennington to advise the parents in a meaningful way. And I'd like to get back to my earlier question. I'm looking at the CUSD page 15 in the excerpts of records, which I believe is a factual finding, or maybe a legal finding, in paragraph 18 at page 15 of the ALJ opinion. And in that, the ALJ says, here Dr. Lennington indicated in her testimony, that while she would have preferred to observe for the full 90 minutes, she was still able to develop opinions about the SDC, the classroom, advise the parents regarding the SDC, and give informed testimony at the hearing regarding the SDC. Now maybe I'm reading too much into that, but what I'm reading the ALJ to say is that it wouldn't have made any difference if the ultimate conclusion of the expert was a classroom placement is not appropriate, then 20 minutes, 90 minutes doesn't matter. And perhaps that ultimately, Dr. Lennington would not have been successful in persuading the ALJ in terms of what was an appropriate placement for the child, but the point is, we never got the chance to do that. Well, counsel, the courts have been faced numerous times with claims that the parents a wrongful act by an opponent in litigation has limited or eliminated the complaining party's ability to prove his or her case. And in all of those cases that I'm aware of, whether from the U.S. Supreme Court, this court, other circuits, the burden has been placed on the claimant to show, if the wrong hadn't occurred, this is what I would have done, and this is why I believe the result would have been better. What would Dr. Lennington have done if she'd had the additional 70 minutes? That's something we don't know. But isn't the burden on you to know it in order to upset the ALJs? Not in these cases. If you look at ML v. Federal Way and the RB case, where the court said in essence that we declined to speculate on what this IEP would have looked like if the school district had included the required participants for the IEP meeting. The same is here. But your facts here would be better if Dr. Lennington had been excluded completely from observing the class. Then that would have been a nice fit with the Federal Way case, wouldn't it? The problem here is whether or not 20 minutes was enough, and whether 70 extra minutes would have changed her opinion as to whether the placement was appropriate. In Federal Way, the teacher was excluded completely from participating in the development of the IEP. Well, I'd agree if she was completely excluded, but 20 minutes, and if you look at Dr. Lennington's actual testimony, she said that that was not sufficient for her to really reach any opinions about the classroom. I mean, 20 minutes. I mean, I could understand the point if she had had 70, 75 minutes, but 20 minutes. I'm just not sure we can declare that factual finding to be clear error based on your disagreement with the reading of it. That's the problem I'm having. Even if we look at the standard in Federal Way, the two judges who agreed on what the standard is, Judge Clifton in dissent and Judge Gould in concurrence, agreed that the technical violation was harmless error, not structural error. So if we look at this and read this as a finding by the ALJ that the technical violation was harmless error, and the record is otherwise thoughtful and careful, as the case law suggests, then why shouldn't we give substantial deference to the determination by the ALJ? The ALJ did not find technical violation here. She basically found that the violation did not matter, because... A violation is a harmless violation. The reason she found it didn't matter, I mean, she found, and this is what the district court focused on, was that the parents, that Dr. Lennington's was not particularly familiar with the placement, and her testimony was entitled to less weight. This gets back to the whole notion of leveling the playing field in these cases, and you know, in the ML v. Federal Way, Judge Gould, specifically with reference to the substantive issues about whether substantively a fate was offered, which is where the ALJ went in this case, said that, quote, we ought not to speculate here that noncompliance with the procedural standards in the idea did not matter. But the facts are not helpful to you in Federal Way, because in that case, the student had been placed in a regular classroom with a teacher for some period of time, and what was missing from the process was the teacher's observations of how the student had performed over a period of days in a regular classroom with other students. And that, to me, that's a difference, a distinction with a difference. Whereas here, what we're really arguing about is 20 minutes versus 90 minutes, and whether or not it would have made a material difference in her ultimate recommendation that a classroom placement was not appropriate for the student. Well, again, it gets back to the process. And the courts have long recognized, particularly the Supreme Court, Justice O'Connor, in the Schaefer case just two years ago, talked about the natural advantage the school districts always enjoy in these cases, and that the need for parents and parents' experts to have access to all available information. And I would submit 70 minutes is a significant amount of time and a significant amount of information that was denied to the parents in this case. And we're also, we can't decide the fact that we're addressing a specific state statute here. But counsel, if Dr. Lanahan had come in and she had said, during the course of my background education experience, I have observed numerous classroom situations, and I have observed at length LM, I know his needs, I know his circumstances, I know that many classroom situations would be satisfactory for him. But I cannot comment effectively on this classroom situation, because I only got to observe it for 20 minutes. Now, if that were her testimony, then I think you'd have a strong argument. But in this case, the ALJ found that both the family experts and the district experts were in agreement on what his needs were, what his circumstances were, and in general agreement on how classroom versus in-home functioned, but they had a philosophical difference as to whether classroom settings would ever be appropriate. And that was a key finding by the ALJ early on, and explains in part her dismissal of this dispute as merely technical. Isn't that a problem for you? No, I don't believe it is. Whatever Dr. Lennington's philosophical basis, that's really not the point. It's not Dr. Lennington's mind that we're trying to change here based upon the observation, it's the administrative law judge's mind. And whatever her personal philosophical bents or tendencies, that does not... But if her position is, I know enough about classroom situations in general, and in-home situations in general, to know that the latter is always better than the former, what would another 70 minutes have done about that? Well, nothing. But what the 70 minutes would have allowed her to do would be to comment upon, if I'm understanding your question, the appropriateness of that specific classroom. Dr. Lennington had... All classrooms are inappropriate. Well, she didn't say that. She testified in the context of this particular child, but that did not prevent her from being entitled to observe. She testified, she really didn't get to see any of the one-on-one instruction, which the district had said was an important element of the program they had offered. You know, a reversal in this case is going to mean that this policy, and it is a policy, this was not where an administrator made a mistake or didn't get the memo. This is a policy where all parents of disabled children in that district are denied the chance to level the playing field, to overcome the natural advantage of the school. Except the rationale is that given the vulnerability of the children in the classroom setting, more than 20 minutes of a stranger in the classroom would be distracting and troublesome And the special education teacher who runs that classroom, April Waldron, testified that observations in excess of 20 minutes were not a problem. It happened all the time with her own staff. As long as the observers were not engaging the children or being unobtrusive, she said that that was not a problem. So you should look at the underlying rationale for this policy. It's not there. Counsel, I'd like to follow up on Judge Singleton's point and direct your attention to page nine of the Administrative Law Judge's findings and conclusions. I'm looking in paragraph 25 where he seems to say exactly what Judge Singleton was pointing on, that in talking about the different expert witnesses, in essence a classic battle of the experts, the divergence in the witnesses' recommendations for petitioner's placement appeared to hinge less upon differing understandings of petitioner's needs and more upon different philosophical beliefs about when students with autism should receive instruction in any type of group setting. Isn't that the factual finding that basically says what we have here is a difference of opinion among the experts as to whether a classroom placement would ever be appropriate for this particular student? Well, I don't know about ever, but at that point in time, you do have a difference of opinion about, based upon the child's needs and levels of functioning, there was certainly a difference of opinion as to whether a classroom placement in general was appropriate for him at that time. But that's not the issue here, and that's not the issue that the district court focused on. The issue here is the appropriateness of the classroom offered by the district. The ability of the... That's not how I read that. As I read that factual finding, it is basically an assessment, after listening to the experts for the school district and the experts for the parents, in which the fact finder is concluding what I've got here are two different philosophical approaches to how you treat a child with severe autism. And the expert that the parents have selected prefers individual one-on-one instruction at home, whereas I'm hearing testimony on the other side from the experts that this child could do well in a group setting. And that's what it comes down to. I would beg to differ. It comes down to the parents having access to all evidence to which they are entitled to level the playing field in this type of situation. What precisely is the prejudice here, as you look at it? The parents were not given access to all information about that classroom, and Dr. Lenningson... And what should have happened that did not happen? They should have been allowed to observe for the entire 90 minutes, which the administrative law judge found to be reasonable. The administrative law judge found that that was a reasonable request for Dr. Lenningson to have made, and then she would have observed. We don't know what she might have observed during those additional 70 minutes, and we can't speculate as to what she might have observed. The point is, she wasn't able to. She was a partially prepared expert, which is the term that was used by the state court in the Benjamin Gee case. But the ALJ went on from there to find that that was not a bar to determining this issue. Isn't that correct? Well, the ALJ found that Dr. Lennington, if I'm understanding your question correctly, that Dr. Lennington was able to give some informed testimony to ALJ's words, based upon a 20-minute observation, but then she immediately goes on to find that she was less familiar with the district's placement than the district's expert, and thus her testimony was entitled to less weight. Didn't she say in that same context, Dr. Lennington would have been less familiar with the district's plan than the district's expert, even if she spent 10 hours there? Because the expert had spent years, or months, anyway. And had designed the program. I mean, who would know more about it? That's true, and following that rationale, that leads us to the point that the parents are entitled to at least that chance to access that information. The court, if you would look at, you know, in Schaefer, Justice O'Connor said, school districts have a natural advantage in information and expertise. And Congress addressed this when it obliged schools to safeguard the procedural rights of parents and to share information. Idea thus ensures parents' access to an expert who can evaluate all the materials that the school must make available. All the materials. And who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition. That's Justice O'Connor two years ago. That is the violation that occurred here. The second step of the analysis, which the district court claims is missing, is not often the substantive aspects of this case. It's right here where the ALJ found that the parent's expert testimony is entitled to less weight because she didn't have enough familiarity with the program. Thank you, counsel. Your time has expired. Thank you. Mr. Harbuttle, I think you reserved some time. Yes, Your Honor, I have three particular things I would like to address, and that is, number one, as Justice Tallman mentioned, Dr. Lunnington was able to provide evidence at the due process hearing, and she indicated that she was able to develop an opinion that this student, with respect to whether he would fit into the classroom, she had sufficient information to determine that he would not fit into the classroom based on the observation that was conducted, which was consistent with her otherwise philosophical belief that severely autistic children should not be placed in classrooms. Well, counsel, you concede, do you not, that the district erred in denying Dr. Linehan at least 90 minutes, maybe more? I concede that the ALJ found a procedural error, and I don't have a – I think that in itself might have been problematic, but I do concede that the ALJ made that determination and we did not appeal that particular determination. However, the two cases that have been most discussed here, I think, the Federal Way case and Benjamin G., both suffer – the student's case here suffers with respect to the analogy to both of those cases because in the Federal Way case there was no general ed teacher whatsoever. In the Benjamin G. case, which is the case upon which the district court relied almost exclusively, there was no observation at all. A motion was made following the filing of the due process request by the student. That was denied at all levels prior to the Court of Appeals at State, and that entire lack of observation opportunity was what was found to be a violation in that case. Which would be consistent with our holding in Federal Way. Correct. Now, the other thing to point out here is that there's potential prejudice at the address. There's also potential prejudice or alleged prejudice at the due process level. But the chronology here is really critical in the comparison to Benjamin G. is really critical because this due process request was filed in March of 2005, about one month after Dr. Lennington's observation. The due process hearing occurred 11 months later in February of 2006 and no further request for observation was made, no motion was made for observation. And if Benjamin G. were an analogous case, a motion for further observation would have been made and it would have been denied and then there would be that question whether there was prejudice. The other important point to consider is that at the trial court level, both parties are permitted to present additional evidence. If this was that crucial an issue in Dr. Lennington's opinion and it was that important that we get the prejudice into the record, student had every right at the trial court level to bring Dr. Lennington back, depose her, have her testify before the district court to explain what that prejudice was and that was not undertaken by student in this case. Clearly the inferences are, and I think the ALJ made the right inference in this respect, philosophically Dr. Lennington was opposed to classrooms, the observation was irrelevant with respect to changing that and there was no further necessity beyond the full court of appeal. But let's assume that that's correct and that Dr. Lennington's position like that of her co-colleague who also testified on behalf of the parents is that for a child this age with this severe autism, a classroom setting is simply inappropriate, any classroom setting. Could Dr. Lennington not however have had a fallback position, if you reject my base position that no classroom setting, let me critique this one and I was handicapped in preparing my critique because I only had 20 minutes. Yeah and that's why Benjamin G. matters and that's why ML matters because the federal way case matters because that was never done, that position was never taken, that's a hypothetical that didn't occur, could have occurred, that was not the argument. The argument was I had, I would have preferred 90 minutes, as your honor pointed out, I didn't get 90 minutes but I was still able to determine based on what I did observe that this student would not have been a good fit for that classroom, period. When that determination was made by Dr. Lennington it was adopted by the ALJ and rejected. It was accepted as Dr. Lennington's opinion but it was rejected in the context of the with all the other elements and credibility determinations which I think your honors will agree are appropriately made at the ALJ level. Anything further? On that particular case, no, I know that we have other, the other cases we haven't discussed and I don't know how your honors want to deal with those. Well the one question that I would like you to address is the, I guess the implied placement in law issue. Right, in the state put question, yeah, that is an easy answer. There is an easy answer to that, it's an unfortunate use of language I think but the truth is even if it applies in that particular case, which it obviously did, it doesn't apply when the district court or an ALJ, depending on the level of adjudication that we're at, sets a finite time frame or an agreement between the parties sets a finite time frame. In this case, counsel requested untimely a finding of appropriate, a substantive appropriateness of his private program. That was rejected by the district court, it was later agreed to be an erroneous request by counsel and the trial court in its original order and its denial of the state put motion explicitly said, regardless of what I might have said about the appropriateness of the private program, and of course there is a statement in there about the appropriateness, I limited it in time to the next IEP. The record was not clear at that point what the next IEP was, but the judge has the discretion to determine what the limits of its order are. And the limits of that order that we're appealing now was from the date of his third birthday until the next IEP. Therefore you don't need an implied in law argument. You did in that case, but you don't in this case. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument next in Western Filter v. Argan. Thank you.
judges: O'scannlain, Tallman, Singleton